UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
                                    :
IN RE ALCON SHAREHOLDER LITIGATION  :
                                    :
                                    :
                                    :
------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5·24-10

10 Civ. 0139

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Erica P. John Fund (the "Fund") brought this case as a shareholder class action on behalf of itself and a class of all other similarly-situated investors of Alcon, Inc. ("Alcon") against Novartis AG ("Novartis"), Nestlé S.A. ("Nestlé"), Alcon, certain Alcon officers and directors, and third parties.  Several related actions were then brought in this Court by other institutional investors,[1] asserting substantially similar claims arising out of Novartis's plan to acquire all publicly-held shares of Alcon.  The Fund and the institutional plaintiffs in the related actions (collectively, "Plaintiffs") then filed a consolidated class action complaint (the "Complaint") against Novartis, Alcon, Nestlé,[2] and certain Alcon officers and directors (collectively,

---

[1]  The institutional plaintiffs in the related actions are: Oklahoma Firefighters Pension & Retirement System, City of Monroe Employees' Retirement System, City of Westland Police & Fire Retirement System, Massachusetts Bricklayers and Masons Trust Funds, and Boilermakers Lodge 154 Retirement Plan.

[2]  The Complaint alleges claims against Nestlé, the parent company of Alcon, however, by Stipulation and Order dated May 3, 2010, Nestlé was voluntarily dismissed from this action, without prejudice.

"Defendants"), asserting breach of fiduciary duty,[3] breach of contract, promissory estoppel, and unjust enrichment claims, and seeking equitable and monetary relief.  Alcon answered the Complaint on March 29, 2010, and Novartis now moves to dismiss the Complaint on grounds of forum non conveniens.   For the reasons stated below, Novartis's motion is GRANTED and the Complaint is dismissed as to all Defendants.

## I. **BACKGROUND**[4]

### A.   PARTIES

Plaintiffs  are  six  institutional  investors  --  five pension and retirement funds and one charitable foundation -- which are organized under the laws of and keep their principal places of business respectively in Michigan, Massachusetts, Oklahoma, Pennsylvania, and Wisconsin.  Plaintiffs bring this action on behalf of themselves and all other persons who owned shares of Alcon common stock as of the date of the Complaint.

---

[3]  By Stipulation and Order dated April 21, 2010, Plaintiffs voluntarily dismissed their breach of fiduciary claims, without prejudice, against Alcon.  No such dismissal was stipulated to by Novartis, the movant here. As a result, the breach of fiduciary duty claims remain operative against Novartis for the purposes of this motion to dismiss.

[4]  This factual background is derived from the Complaint and documents attached thereto, referenced therein or integral to its drafting, as well as evidentiary submissions by the parties.  For purposes of deciding a motion to dismiss on forum non conveniens grounds, the Court may consider affidavits, declarations, and other such evidentiary submissions.  See, e.g., Transunion Corp. v. PepsiCo, Inc., 811 F.2d 127, 130 (2d Cir. 1987). Unless specifically referenced, no further citation to these sources will be made.

-2-

Plaintiffs assert claims against Novartis, Alcon, and eight individual Alcon officers and directors. Novartis is a multinational pharmaceutical company, incorporated as a stock corporation under Swiss law. Novartis's corporate headquarters are in Basel, Switzerland, and the company has offices throughout the United States, including in New York City.

Alcon, a producer of ophthalmology products, is a Swiss corporation whose registered place of business is in Hunenberg, Switzerland. Alcon stock trades publicly and exclusively on the New York Stock Exchange ("NYSE"), and Nestlé and Novartis are controlling shareholders. Nestlé acquired Alcon in 1978 and retained 100 percent ownership of Alcon until March 2002, when Nestlé sold 23 percent of Alcon's shares to the public in an initial public offering (the "IPO"). Alcon has remained incorporated in Switzerland continuously since 2002 and, since the IPO, Alcon has filed annual reports with the Securities and Exchange Commission ("SEC") on Form 20-F (the "Form 20-Fs"), the SEC reporting schedule for foreign corporations. Alcon allegedly has multiple manufacturing facilities and over 1,000 sales representatives in the United States. Of the eight Alcon directors against whom Plaintiffs bring claims, two reside in

-3-

the United States, and five reside in Switzerland or other European countries.

## B. FACTUAL ALLEGATIONS

On April 6, 2008, Nestlé and Novartis executed two agreements: (1) a Purchase and Option Agreement, which provided Novartis the right to immediately purchase 25 percent of Nestlé's Alcon stock and an option to purchase the remainder of Nestlé's Alcon stock starting on January 1, 2010; and (2) a Shareholders Agreement that, among other things, outlined the corporate relationship between Novartis and Nestlé as shareholders of Alcon (collectively, the "April 2008 Agreements"). Novartis purchased a 25 percent stake in Alcon from Nestlé on July 7, 2008, and, as contemplated in the April 2008 Agreements, retained its option to purchase, beginning on January 1, 2010, Nestlé's remaining 52 percent equity stake in Alcon.

On January 4, 2010, Novartis exercised its option to purchase Nestlé's remaining 52 percent equity stake in Alcon for $180 per share in cash consideration (the "Nestlé Option Merger"). The closing of the Nestlé Option Merger, which would provide Novartis with a 77 percent share of Alcon, remains subject to certain conditions and regulatory approvals. Also on January 4, 2010, Novartis announced its intention to purchase the remaining 23 percent equity stake --

-4-

approximately 69 million shares -- held by minority public shareholders (the "Public Share Acquisition"). In exchange for their shares, the minority shareholders would allegedly receive non-cash consideration of 2.80 shares of Novartis for each outstanding Alcon share, which amounts to an exchange value of approximately $150 per share. The Public Share Acquisition has also not yet closed, and remains subject to certain conditions and regulatory approvals.

Plaintiffs' claims against Novartis, Alcon, and certain Alcon directors arise out of the proposed Public Share Acquisition. Plaintiffs assert breach of contract and promissory estoppel claims, arguing that Novartis's forced acquisition of Alcon's publicly-held minority shares would violate provisions of the Alcon Board of Director's Organizational Regulations (the "Organizational Regulations") and representations in Alcon's Form 20-Fs. The Complaint alleges that the Organizational Regulations and the Form 20-Fs require that a transaction resulting in a change in control of Alcon be approved by a special committee of independent directors (the "Independent Director Committee"). The Organizational Regulations provide that "The Board shall only resolve [a proposed merger] if a majority of the members of [the] Independent Director Committee so recommends." (Declaration of James J. Sabella in Opposition to Defendant

Novartis's Motion to Dismiss on Grounds of Forum Non Conveniens, dated April 19, 2010 ("Sabella Decl."), Ex. 4 at 13.)  Plaintiffs assert that Defendants are also bound by the same requirement as reflected in the Form 20-Fs.

Plaintiffs and the Independent Director Committee oppose the Public Share Acquisition, having found that the financial analysis and valuation underpinning the Public Share Acquisition to be "fundamentally flawed." (Complaint ¶ 76.) Despite the opposition, Plaintiffs assert that Novartis plans to go forward with the Public Share Acquisition upon the closing of the Nestlé Option Merger by replacing the Independent Director Committee directors with directors who will approve the Public Share Acquisition. According to the Complaint, mergers under Swiss law require the approval of two-thirds of shareholders and a simple majority of the board of directors.  Upon closing of the Nestlé Option Merger, Novartis will effectively control sufficient shares and directors to effectuate the Public Share Acquisition, notwithstanding the opposition of the current Independent Director Committee.

Plaintiffs assert irreparable harm to themselves and the class of minority shareholders, who would allegedly lose approximately $30 per share if the Public Share Acquisition is consummated, amounting to a total loss of approximately $2.3

-6-

billion. As a result, Plaintiffs ask the Court to enjoin the Public Share Acquisition and/or to declare that its consummation is conditioned upon Independent Director Committee approval.

## II. **DISCUSSION**

### A.    FORUM NON CONVENIENS

This litigation raises another instance of the common cases in which plaintiffs commence lawsuits in United States courts to adjudicate disputes entailing alleged losses suffered from commercial transactions and other events that occur predominantly in a foreign country. The dispute here, however, presents some uncommon dimensions. Plaintiffs' claims involve not an ordinary commercial dispute between two parties to a transaction, but matters of corporate governance that implicate the legal interests of countless third-party shareholders around the world, not just those litigants now before the Court. As in Steward Int'l Enhanced Index Fund v. Carr, Plaintiffs question the ability of a foreign forum to vindicate their interests as shareholders in the face of a corporate merger. See No. 09 Civ. 5006, 2010 WL 336276 (D.N.J. Jan. 22, 2010) (dismissing on forum non conveniens grounds plaintiff-shareholders' claims against foreign corporation alleging failure to engage in good faith negotiations with a potential acquirer). Here, Plaintiffs

-7-

seek relief not for alleged wrongs committed and losses incurred, but a prospective remedy under United States law to halt a corporate transaction formulated under Swiss law but not yet consummated, and to determine monetary damages that have not yet accrued.   Like a relative concerned with the consequences of an impending matrimony, Plaintiffs, fearing that their interests as minority shareholders will not be sufficiently protected under Swiss law, ask this Court to intervene in a long-contemplated, and laboriously planned, corporate union.   Notwithstanding Plaintiffs' entreaties to the Court, Novartis now moves to dismiss the Complaint on forum non conveniens grounds, arguing that all of Plaintiffs' requests for relief, at their core, arise out of a decidedly Swiss transaction that, if necessary, can be adequately and more appropriately reviewed by a Swiss court.

Courts in this Circuit employ a three-part test to analyze the application of forum non coveniens.   See Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 154 (2d Cir. 2005); Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).   The Court first determines the degree of deference that should be accorded the plaintiff's choice of forum.   See Norex Petroleum, 416 F.3d at 153-54. Second, the Court considers whether there exists an adequate and available alternative forum where the dispute could be

-8-

adjudicated. See Piper Aircraft v. Reyno, 454 U.S. 235, 254 n.22 (1981); Gulf Oil v. Gilbert, 330 U.S. 501, 506-07 (1947). Finally, the Court assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to any adequate alternative venue, by balancing the private interests of the litigants and the public interest concerns of the Court in accordance with the factors articulated by the Supreme Court in Gilbert. See Gilbert, 330 U.S. at 508-09; Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 500 (2d Cir. 2002); Turedi v. Coca Cola Co., 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006), aff'd, 343 F. App'x. 623 (2d Cir. 2009). The inquiry probes whether, in the interests of justice and all other relevant concerns, the action would best be brought in another venue. Even where deference is due to a plaintiff's choice of forum, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft, 456 U.S. at 256 n.23.

1. Deference to Plaintiffs' Choice of Forum

Generally, there is a strong presumption in favor of a plaintiff's choice of forum. See id., 454 U.S. at 250; DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 28 (2d Cir. 2002); Iragorri, 274 F.3d at 70-71. Deference to a plaintiff's choice is heightened where a plaintiff is an

American citizen, particularly where the underlying claims arose under United States law or seek to enforce or promote significant American policy interests. See Turedi, 460 F. Supp. 2d at 522 (citing Piper Aircraft, 454 U.S. at 256). "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." Iragorri, 274 F.3d at 72. However, deference to a plaintiff's choice is diminished where the core operative facts upon which the litigation is brought bear little connection to the chosen forum. See, e.g., LaSala v. UBS, AG, 510 F. Supp. 2d 213, 224 (S.D.N.Y. 2007); Turedi, 460 F. Supp. 2d at 522-23; Corporacion Tim S.A. v. Schumacher, 418 F. Supp. 2d 529, 534 (S.D.N.Y. 2006).

Plaintiffs assert that, as United States citizens who purchased shares on the NYSE of a company doing substantial business in the United States, their choice of forum is entitled to substantial deference. Novartis counters that Plaintiffs' choice should be accorded limited deference because Plaintiffs' claims arise out of voluntary investments in a foreign corporation whose corporate affairs are governed by Swiss law.

Upon review of the parties' evidentiary submissions, the Court finds that Plaintiffs' claims, at their core, challenge a Swiss transaction governed by Swiss law. The Public Share Acquisition -- the final step in a proposed merger of two Swiss-incorporated, Swiss-headquartered corporations -- is prospectively, as well as if it closes, a creature of Swiss law. In other words, Plaintiffs' requests for injunctive or declaratory relief, as well as their claims for monetary damages,[5] all arise out of corporate relationships and documents explicitly governed by Swiss law.

Plaintiffs, in essence, ask this Court to extraterritorially enjoin the Public Share Acquisition from proceeding to consummation. That commercial transaction, reportedly part of the largest corporate merger in Swiss history, originated in Switzerland by the actions of the officers and directors of two Swiss corporations who presumably applied Swiss law in structuring the underlying

---

[5] The Court notes that to the extent Plaintiffs seek damages based on the future consummation of the Public Share Acquisition, these claims are not presently ripe for adjudication. Until the Public Share Acquisition closes, Plaintiffs' claims for damages remain speculative and premature. See Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985) (finding that the ripeness doctrine "prevent[s] the courts, through premature adjudication, from entangling themselves in abstract disagreements."); AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship, 6 F.3d 867, 872 (2d Cir. 1993) (stating that a case is ripe when it does not depend upon "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all"); Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 408 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003) (finding no actual controversy and denying declaratory relief where plaintiff's claims were based on "premature concerns about contingencies that may or may not come to pass").

-11-

agreements and their planned implementation.   Those actions are subject to the regulatory oversight of Swiss authorities and to the legal interests of Novartis and Alcon shareholders located all over the world.

Despite the overwhelmingly Swiss origin and solid foundation of the business transaction at issue, Plaintiffs rely on DiRienzo to argue that their choice of forum of a United States court sitting in New York should be accorded substantial deference.  See 294 F.3d at 27.  In DiRienzo, the Second Circuit found that the plaintiffs' choice of forum in a federal securities fraud case brought against foreign corporate defendants should be accorded deference where "defendants sought out business opportunities in this country by registering stock on American exchanges, filing statements with the SEC and conducting the bulk of its business in the United States."  Id.  However, the instant dispute is readily distinguishable from DiRienzo.   Plaintiffs' claims do not assert fraud in violation of United States securities law, nor do they arise out of the purchase or sale of securities. Although the Public Share Acquisition, if consummated, would impact the value of Plaintiffs' NYSE shares, no NYSE securities transaction underpins Plaintiffs' requests for prospective relief. As a result, unlike the transactions in DiRienzo, the Public Share Acquisition does not squarely

-12-

implicate the application of United States law or predominant public policy interests. See id. at 28 ("[P]laintiffs offered a quite valid reason for litigating in federal court: this country's interest in having United States courts enforce United States securities laws.") To the contrary, the legally significant acts implicated by Plaintiffs' claims involve conduct and transactions governed by Swiss law.

Indeed, the deference due to Plaintiffs' choice of forum is further diminished by the explicit notice provided to Plaintiffs regarding the jurisdictional risks associated with their investments in Alcon stock. Plaintiffs argue that their contract-based claims, which, as noted above, are not yet ripe for adjudication, arise under United States law. (See Declaration of Professor Dr. Henry Peter, dated April 19, 2010 ("Peter Decl."), ¶ 44.) However, the Form 20-Fs expressly indicate that any challenges to actions of the board of directors would be governed by Swiss law and would have to be brought in a Swiss court. The 20-Fs section entitled "Risks Related to Our Jurisdiction of Incorporation" provides, in pertinent part:

> We are a corporation incorporated under the laws of Switzerland. The rights of holders of our common shares are governed by Swiss corporate law and by our Articles of Association. In particular, Swiss corporate law limits the ability of a shareholder to challenge resolutions or actions of our board of directors in court. Shareholders generally are not permitted to file a suit to reverse a decision or action by directors but

-13-

> are permitted to seek damages for breaches of fiduciary duty. Shareholder claims against a director for breach of fiduciary duty would, as a matter of Swiss law, have to be brought at our place of incorporation in ... Switzerland, or at the domicile of the involved director. In addition, under Swiss law, any claims by shareholders against us must be brought exclusively at our place of incorporation.

(See Sabella Decl., Ex. 2 at 23.) The 20-Fs also indicate that any provisions of the Organizational Regulations included therein are incomplete and qualified by reference to the Organizational Regulations, which were created pursuant to Swiss law. (See id., Ex. 2 at 112.)

Since all of Plaintiffs' claims, at their core, challenge the actions of Alcon's board of directors on the basis of a purported breach of the Organizational Regulations, there is no ambiguity surrounding the law applicable to Plaintiffs' claims or the jurisdictional risk associated with Plaintiffs' purchase of Alcon stock. Plaintiffs cannot now disclaim notice of the jurisdictional risks associated with their investments in order to allege that their lawsuit has a bona fide connection to this forum. Accordingly, despite the presumptive deference to be accorded an American plaintiff's choice of forum, see Carey v. Bayerische Hypo-Und Vereinsbank AG, 370 F.3d 234, 238 (2d Cir. 2004), the Court finds that in

-14-

this instance, only limited deference is due to Plaintiffs'
choice of forum.[6]

### 2.    Availability of an Adequate Alternative Forum

Having found that Plaintiffs' choice of forum is entitled
to limited  deference, the Court next considers whether an
adequate alternative forum exists in which Plaintiffs' claims
could  be  adjudicated.    The  adequate  alternative  forum
requirement is ordinarily satisfied if (1) the other forum is
available because the defendant is amenable to service of
process there, and (2) the forum permits litigation of the
"subject matter of the dispute and offers remedies for the
wrongs the plaintiff alleges, even if the causes of action and
relief available there are not identical in every respect to
the claims or redress he seeks in his chosen forum."    Do
Rosario Veiga v. World Meteorological Organisation, 486 F.
Supp. 2d 297, 303 (S.D.N.Y. 2007) (citing Monegasque, 311 F.3d
at 499); see also Capital Currency Exch., N.V. v. National
Westminster Bank PLC, 155 F.3d 603, 609-610 (2d Cir. 1998).
Novartis, as the movant, bears the burden of demonstrating

---

[6]  The Court notes, however, that the level of deference here is tied
primarily to the overwhelmingly Swiss nature of the transaction and
conduct at issue.  Conceivably, the Court's analysis and conclusion on the
level of deference accorded to Plaintiffs' choice of forum could alter, to
the extent Plaintiffs were able, at a later stage of this dispute, to
plausibly assert cognizable claims arising under United States federal or
state law.

-15-

that an adequate alternative forum exists. See Bank of Credit & Commerce Int'l (OVERSEAS) Ltd. v. State Bank of Pak., 273 F.3d 241, 248 (2d Cir. 2001).

Novartis asserts that Switzerland is an adequate alternative forum and submits that all Defendants, including all of the implicated Alcon officers and directors, are amenable to process in Switzerland. (See Declaration of Professor Dr. Peter Nobel, dated March 26, 2010 ("Nobel Decl."), ¶¶ 26-27.) In addition, Novartis asserts that Swiss courts permit litigation of the subject matter of the dispute. Novartis points to the Swiss Merger Act, which governs challenges to mergers such as the one at issue here. The Swiss Merger Act affords any shareholder dissatisfied with a final merger price the opportunity to seek a judicial appraisal of the fair value of their shares. Specifically, Article 105 of the Swiss Merger Act would enable all Alcon shareholders dissatisfied with the Public Share Acquisition to seek a judicial appraisal of their shares post-merger, and, if the determined fair value exceeds the merger consideration, all Alcon public shareholders would be entitled to additional consideration. On this basis, Novartis argues that there is an adequate remedy available in Swiss courts.

Plaintiffs counter that Swiss courts are inadequate because Plaintiffs would be unable to obtain a pre-closing

-16-

injunction in a Swiss court, and several additional litigation
procedures available in United States federal courts are
unavailable in Swiss courts.  In addition, Plaintiffs contend
that Swiss courts do not permit litigation of the subject
matter of the dispute because Swiss law does not recognize the
role of the Independent Director Committee as provided for in
the Organizational Regulations and the Form 20-Fs.

Novartis contests Plaintiffs' assertion that Swiss law
precludes the issuance of a pre-closing injunction and
contends that, in certain circumstances, Swiss courts are
empowered to enjoin mergers.  (See Supplementary Declaration
of Professor Dr. Peter Nobel, dated May 10, 2010, ¶¶ 14-17.)
Regardless, it is well-established that the "availability of
an adequate alternative forum does not depend on the existence
of the identical cause of action in the other forum, nor on
identical remedies."    Norex Petroleum, 416 F.3d at 158.
Further, even if pre-closing injunctive relief is unavailable,
Plaintiffs have failed to demonstrate that the lack of such an
equitable remedy is so clearly unsatisfactory as to amount to
no remedy at all.  See Piper Aircraft, 454 U.S. at 254.  All
of Plaintiffs' causes of action, including their claims for
prospective relief, are premised on the financial injury that
allegedly would result from consummation of the Public Share
Acquisition.  As discussed further below, although Plaintiffs

-17-

dispute the sufficiency of the monetary remedy available in Swiss courts, it is undisputed that a monetary remedy in some form is available under Swiss law, and Plaintiffs have not shown that such a remedy is so clearly unsatisfactory so as to render Swiss courts an inadequate forum for resolution of this dispute.    This standard of the forum non conveniens doctrine demands that the alternate forum be adequate, not perfect, and not a mirror image of every substantive and procedural right, remedy and protection potentially available to Plaintiffs' in the American forum of their choice.

Plaintiffs'  inadequacy  arguments  based  on  the unavailability of class action or contingent fee arrangements in Swiss civil litigation are equally unavailing. It is well-established that "the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." Blanco v. Banco Indus. de Venezuela, 997 F.2d 974, 982 (2d Cir. 1993).    Courts in this District have also specifically and repeatedly held that the availability of contingency fees, class actions, or federal-style discovery is not dispositive of the adequacy of an alternative forum.[7]  See, e.g., Aguinda

---

[7]  The Court notes that, contrary to Plaintiffs' assertions, the record indicates that Swiss law provides for document discovery, though, unlike United States civil litigation, it is the duty of Swiss judges to initiate and guide the discovery process.    (See Nobel Decl. ¶ 19.)    Moreover, insofar as Plaintiffs' choice of forum is motivated by reasons of "tactical advantage" or forum-shopping grounded on considerations such as

v. Texaco, 303 F.3d 470, 478 (2d Cir. 2002) (finding that unavailability of class action mechanism does not render alternative forum inadequate); BlackRock, Inc. v. Schroders PLC, No. 07 Civ. 3783, 2007 WL 1573933, at *7 (S.D.N.Y. May 30, 2007) (quoting Potomac Capital Inv. Corp. v. KLM Royal Dutch Airlines, No. 97 Civ. 8141, 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998) ("[W]ere a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered adequate -- and that is not the law.") (internal quotation omitted)); Van Der Velde ex rel. Van Der Velde v. Philip Morris Inc., No. 02 Civ. 783, 2004 WL 48891, at *3 (S.D.N.Y. Jan. 9, 2004) ("Plaintiff's complaints regarding contingency fees and the requirement that a losing party pay her opponent's fees do not concern the adequacy of available remedies.").

Finally, Plaintiffs assert that Swiss courts fail to provide an adequate forum here because they do not permit litigation of the subject matter of the instant dispute. Plaintiffs submit that, under Swiss corporate law, unlike United States law, a committee of the board of directors such as the Independent Director Committee cannot make any decisions that are binding on a board of directors. (See

the availability of contingency fees, more generous damages remedies or more favorable local laws, the degree of deference Plaintiffs' choice is entitled to diminishes. See Iragorri, 274 F.3d at 71.

-19-

Peter Decl. ¶¶ 52-59.) Plaintiffs contend that Swiss law would thus "gut the core" of their cause of action. See Parex Bank v. Russian Sav. Bank, 116 F. Supp. 2d 415, 427 (S.D.N.Y. 2000). Relatedly, Plaintiffs argue that the relief offered by the Swiss Merger Act is inadequate because its appraisal process would fail to consider damages resulting from the "flawed process leading up to the proposed merger," namely the failure to seek Independent Director Committee approval. (Plaintiffs' Memorandum of Law in Opposition to Defendant Novartis's Motion to Dismiss on Grounds of Forum Non Conveniens, dated April 20, 2010 ("Pls.' Opp. Br."), at 12 (emphasis omitted)).

The Court disagrees. "Implicit in a finding that an alternative forum permits litigation of the subject matter of the dispute is a 'finding that the foreign jurisdiction is as presently capable of hearing the merits of the plaintiff's claim ... as the United States court where the case is pending.'" BlackRock, 2007 WL 1573933, at *15 (emphasis in original) (quoting Norex Petroleum, 416 F.3d at 159). As noted above, the alternative forum inquiry does not ask courts to evaluate whether a foreign court permits the same cause of action or whether it would offer the same remedy as a United States court. See Norex Petroleum, 416 F.3d at 158. Instead, this alternative forum inquiry directs courts to consider

-20-

whether the foreign court would be capable of litigating the "essential subject matter" of the dispute. <u>Capital Currency</u>, 155 F.3d at 611; <u>see also</u> <u>Saud v. PIA Invs. Ltd.</u>, No. 07 Civ. 5603, 2007 WL 4457441, at *3 (S.D.N.Y. Dec. 14, 2007) (<u>citing</u> <u>Aguinda v. Texaco</u>, 303 F.3d 470, 476 (2d Cir. 2002) "To support dismissal for forum non conveniens, the foreign court need not be the best possible court but must simply be capable of litigating the dispute.").

The essential subject matter of Plaintiffs' claims is a challenge to the Public Share Acquisition on the basis of a purported breach of Alcon's Organizational Regulations. As described above, the Swiss Merger Act specifically contemplates procedures for shareholders dissatisfied with a merger to challenge a corporate transaction based on the transaction's alleged violation of Swiss law or corporate documents. Novartis submits that Swiss legal doctrine requires reviewing courts to "broadly interpret[]" challenges under the Swiss Merger Act, and to consider, among other things, whether the challenged merger "violates the law or the articles of incorporation." (Nobel Decl. ¶ 64.) Viewed in this light, Plaintiffs' speculation regarding the outcome of a Swiss court's review of the Public Share Acquisition is insufficient to support a finding of inadequacy. The minority protections afforded by the Independent Director Committee are

-21-

provided for in the Organizational Regulations, a corporate document created pursuant to Swiss law.  The Court is not persuaded that Swiss courts are inadequate to hear a dispute over the execution of a Swiss corporate document, and it is not the province of this Court to sit in review of the substance of Swiss corporate law, and, on the basis of nothing more than sheer speculation render a categorical judgment holding that under no plausible circumstances would Swiss courts be capable of providing Plaintiffs a fair hearing and, if they are found entitled to relief, to formulate an appropriate remedy for them.

Plaintiffs further question the adequacy of the valuation methods employed by the Swiss Merger Act's appraisal proceedings, asserting that an appraisal of the Public Share Acquisition would not take into account the exchange ratio that the Independent Director Committee could have successfully negotiated if it had been allowed to fulfill its role provided for in the Organizational Regulations.  (See Peter Decl. ¶ 36.)  The Court is not persuaded.  Plaintiffs' argument again speculates regarding the quality, not the availability, of relief under Swiss law.  See Capital Currency, 155 F.3d at 611 (citing Piper, 454 U.S. at 249) ("[F]orum non conveniens dismissal is not trumped simply because the foreign forum will apply different substantive law

-22-

than an American court."); see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 387-88 (S.D.N.Y. 2002). For a difference in substantive law to be outcome-determinative, Plaintiffs would have to demonstrate that the relief available in Swiss courts is "so clearly inadequate or unsatisfactory that it is no remedy at all." See Piper Aircraft, 454 U.S. at 255; Alcoa Steamship Co., Inc. v. M/V Nordic Regent, 654 F.2d 147, 159 (2d Cir. 1980) ("It is abundantly clear [] that the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens."). That a Swiss court's determination of the fair exchange value for Plaintiffs' minority shares may ultimately differ from the exchange ratio Plaintiffs believe the Independent Director Committee could have negotiated does not render Switzerland an inadequate forum for resolution of this dispute.

### 3. Public and Private Interest Considerations

Having identified an adequate alternative forum, the Court must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissal. See Gilbert, 330 U.S. at 508-09. Gilbert instructs reviewing courts to disturb a plaintiff's choice of forum only where the balance of private and public interest considerations "strongly"

-23-

favors the moving defendant.  See DiRienzo, 294 F.3d at 30-31
(citing Gilbert, 330 U.S. at 508).  For the reasons discussed
below, the Court is persuaded that the Gilbert considerations
weigh strongly in favor of dismissal.

     a.   Public Interest Considerations

The Gilbert public interest considerations to be weighed
by the Court include: (a) administrative difficulties relating
to court congestion; (b) imposing jury duty on citizens of the
forum; (c) having local disputes settled locally; and (d)
avoiding problems associated with the application of foreign
law.  See Gilbert, 330 U.S. at 508-09; Monegasque, 311 F.3d at
500.

Novartis argues that there is immense local interest in
this matter in Switzerland, that the action should be tried in
a forum familiar with Swiss law, and that the burden of the
dispute more appropriately falls on Swiss courts.  Plaintiffs
counter that the United States has a strong interest in
considering claims brought in United States courts by American
shareholders of stocks purchased on the NYSE.

Because the core events, operative facts, applicable law,
and associated public policy interests at issue are
predominantly local to Switzerland, the Court agrees with
Novartis and finds that the dispute should be resolved in
Switzerland.  There is a significant interest in having

-24-

localized matters decided in the local forum in accordance
with domestic law governing the case.  See Gilbert, 330 U.S.
at 509 (noting the "local interest in having localized
controversies decided at home"); Monegasque, 311 F.3d at 500-
01 ("[T]here is no reason why localized matters should not be
determined by the courts of the locale bearing the most
significant contacts with them.").  Plaintiffs assert that
there are significant contacts with this forum because the
final negotiations on the April 2008 Agreements took place in
New York, and the April Agreements were partially drafted and
ultimately signed in New York.  (See Pls.' Opp. Br. at 5.)
However, the interrogatory to which Plaintiffs cite reveals
that, while some negotiation occurred in New York, "[t]he bulk
of the negotiation of the Purchase and Option Agreement and
the   Shareholders   Agreement   was   conducted   while   the
representatives of Novartis and Nestlé were in Switzerland,
and only the final negotiations were conducted in New York."
(Sabella Decl., Ex. 3 at 11.)  Moreover, while "certain pages
of the final Purchase and Option Agreement and the final
Shareholders Agreement were initialed in New York," the final
April 2008 Agreements were executed in Switzerland.  (Id.)

As investors in stock traded exclusively on the NYSE,
Plaintiffs further contend that United States policy interests
are  implicated  by  this  dispute.     However,  as  discussed

-25-

previously, the predominant public policy interest here is that of Switzerland, whose corporations and corporate governance law are at issue.

b.   Private Interest Considerations

The private interests of the litigants that the Court must consider under the Gilbert analysis are: (a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive. See Gilbert, 330 U.S. at 508.

Upon review of the parties' submissions, the Court finds that the bulk of the evidence relevant to Plaintiffs' claims would be far more accessible in Switzerland. Access to Novartis, Alcon, and non-party witnesses whose testimony would be necessary, as well as related documentary evidence, is largely in Switzerland, and thus beyond the reach of this Court's power to compel production. Although several key witnesses, including the independent directors and two individual Defendants, reside in the United States, five of eight individual Defendants, as well as many non-party witnesses, including Novartis's auditors and primary outside counsel, reside in Switzerland or other European countries. The convenience of witnesses is thus, at first blush, a

-26-

relatively neutral consideration. As acknowledged by Plaintiffs, "wherever the case is adjudicated, at least some of the parties and witnesses will incur expenses and be inconvenienced by travel." Shanahan v. Vallat, No. 03 Civ. 3496, 2004 WL 2937805, at *11 (S.D.N.Y. Dec. 19, 2004). However, given that Alcon, Nestlé, and Novartis are all Swiss-based and Swiss-incorporated, the burden of obtaining documentary evidence would likely be substantially reduced in Switzerland. Further tipping the balance in favor of dismissal, a significant portion of the evidence, both documentary and of live witnesses, would likely have to be translated for any effective use in proceedings in this Court. See Turedi, 460 F. Supp. 2d at  526.

As to the second private interest consideration, each of Alcon, Nestlé, and Novartis's directors, as directors of Swiss corporations, would be subject to compulsory process in Switzerland. By contrast, if this dispute were litigated in this forum as Plaintiffs urge, the non-United-States-resident individual Defendants, unless subject to personal jurisdiction in the United States, would likely not be subject to compulsory process. There is also substantial risk that other key third-party witnesses, who reside in Switzerland or elsewhere in Europe, would not be within this Court's subpoena power. Even if some testimony could be obtained and preserved

-27-

by deposition, to do so would implicate proceedings under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, a prospect that entails significant amounts of time even in ordinary cases, and far more in complicated litigation such as this action. In all probability, these circumstances would cause not only greater financial hardships, but additional litigation and attendant significant delays in preparing the case for trial before this Court, and ultimately in resolving the merits of the dispute.

Questions surrounding the enforceability of a judgment rendered by this Court also weigh in favor of dismissal. Defendants submit that, under the Swiss Federal Act, Swiss courts would not recognize a foreign decision based on Swiss corporate law unless the decision is rendered "in the state of the corporation's registered office" or "in the state of the defendant's domicile or ordinary residence." (Nobel Decl. ¶ 80.) Defendants thus contend that a judgment of this Court would likely be unenforceable against Alcon, Novartis, and six of the eight individual Defendants. (See id. ¶¶ 80-81; Memorandum of Law in Support of Novartis's Motion to Dismiss on Grounds of Forum Non Conveniens, dated March 29, 2010, at 24.)

Plaintiffs do not contest Defendants' reading of the Swiss Federal Act. Instead, Plaintiffs contend that the

-28-

enforceability of this Court's order in Switzerland is "not an issue here," arguing that an injunction issued would not have to be carried out extraterritorially because it would be enforceable against Alcon's transfer agent, which is located in New York. (See Pls.' Opp. Br. at 24.) Plaintiffs' proposed path to enforcement urges this Court to traverse a mountain of extraterritorial challenges. Even if their proposition were viable, it would scale only one summit of that veritable alpine range. Plaintiffs, for example, do not address whether any declaratory relief issued by this Court pursuant to Swiss law would be enforceable in Switzerland, nor do they explain the enforceability of any post-closing monetary damages against non-United-States-resident defendants. Even if the Court were to find otherwise and render a judgment in this dispute, "[c]ourts of foreign countries, while likely to use comity language, will be reluctant to give effect to any injunctions purporting to restrain their own citizens and transactions." Dow Jones, 237 F. Supp. 2d at 413 (quoting Albert A. Ehrenzweig, A Treatise on Conflict of Laws § 51, at 183 (1962)). Ultimately, it is undisputed that Plaintiffs would have less difficulty enforcing a Swiss judgment in Switzerland, whether embodying monetary or injunctive relief, or both, and thus the Court finds that this consideration weighs in favor of dismissal.

-29-

See Ski Train Fire, 499 F. Supp. 2d at 450-51; Blimpie Int'l, Inc. v. ICA Menyforetagen AB, No. 96 Civ. 3082, 1997 WL 143907, at *7 (S.D.N.Y. Mar. 25, 1997).

The Court also notes its disagreement with Plaintiffs' assertion that the enforceability of a judgment entered by this Court in Switzerland is not an issue in this analysis. Given the factual underpinnings of this case -- allegedly the largest ever merger of two Swiss corporations -- consideration of the enforceability of this Court's judgment, as Plaintiffs suggest, cannot be properly narrowed to the injunction against Alcon.  See Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 647 (2d Cir. 1956) (finding that the "power to enjoin ... should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country."); In re Maxwell Commc'n Corp., 170 B.R. 800, 809 (S.D.N.Y. 1994) ("Once it is determined that the facts as a whole have a center of gravity outside the U.S., then the court's attention should shift to the propriety of the proposed extraterritorial application of U.S. law.").

Although the analysis here is contemplated in Gilbert as a private interest consideration, the enforceability of a judgment in the instant dispute illustrates the international

-30-

and transnational issues implicated by this type of controversy. Validating Plaintiffs' efforts to prevent the consummation of this decidedly Swiss transaction through litigation in a United States court under United States law would undoubtedly provoke similar attempts to enjoin foreign commercial transactions whenever a foreign country's corporate law is less favorable to a plaintiff's interests. Principles of international comity and the internal affairs doctrine developed in the choice of law context, though not directly applicable here, are both instructive as to the perils such an approach would entail. See Koury v. Xcellence, Inc., 649 F. Supp. 2d 127, 135 (S.D.N.Y. 2009) ("[T]he so-called internal affairs doctrine ... asserts that the state of incorporation has an interest superior to that of other states in regulating the directors' conduct of the internal affairs of its own corporations." (quotations omitted)); see also In re South African Apartheid Litig., 617 F. Supp. 2d 228, 283 (S.D.N.Y. 2009) ("[T]he decision whether to dismiss on comity grounds depends on the degree of legitimate offense to the foreign sovereign, steps the foreign sovereign may have taken to address the issues in the litigation, and the extent of the United States's interest in the underlying issues."). Switzerland, through the Swiss Merger Act, has plainly developed litigation procedures for shareholder challenges to

-31-

corporate transactions, including the type of merger transaction at issue in this dispute.

On the basis of Switzerland's paramount interest in resolving this dispute, coupled with the absence of predominant issues implicating United States federal or state law or public policy, the Court concludes that, were the issue to be presented, there would be no compelling reason to extend the reach of its authority extraterritorially and to force a Swiss court to decide whether to recognize a foreign court's resolution of this decisively Swiss dispute. Prudence cautions otherwise, both so as to avoid overreaching, and to avert the unnecessary globalization of this Court's jurisdiction that would occur if the mere trading of stock on the NYSE would expose foreign businesses to corporate governance challenges in this Court, and thus empower the Court, applying United States law, to halt or unravel complex commercial transactions initiated abroad under foreign laws, to frustrate the legal expectations of foreign individuals and entities who relied upon their laws and processes in structuring business arrangements, and essentially to rewrite, in accordance with American legal principles, the agreements governing those commercial deals. Specifically, as in the instant case, officers and directors of foreign corporations who structure mergers under the laws of their country would do

-32-

so at their peril, not knowing whether an American court, at the behest of any disgruntled stockholder who feels aggrieved, would subsequently reach into their boardroom and, applying United States law, take issue with who can officially pass upon the merger and how their votes count, how the shares exchanged in the merger should be properly valued, whether the interests of all shareholders have been sufficiently protected, and whether breaches of fiduciary duty have occurred. Humbly, in this Court's view, Congress has not prescribed federal court jurisdiction on this grandiose scale, and such a result would cut against the interests of all stakeholders involved, including investors such as Plaintiffs who could lose out on opportunities to purchase shares of foreign corporations that, concerned over the far-reaching implications of such an extravagant claim of jurisdiction, may become reluctant to trade securities on the NYSE.[8]

As instructed by the Supreme Court in Koster v. (American) Lumbermens Mut. Cas. Co., "the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be

---

[8] The Court nonetheless recognizes, as already acknowledged above, that none of the prudential considerations elaborated upon here apply to disputes that implicate United States laws, such as the federal securities laws, for which extraterritorial application may be appropriate. See, e.g., E.ON AG v. Acciona, S.A., 468 F. Supp. 2d 559 (S.D.N.Y. 2007) (discussing application of conduct and effects test to determine whether federal securities laws are to be applied extraterritorially).

granted" are useful forum non conveniens considerations, "[b]ut the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." 330 U.S. 518, 527 (1947). Here, considerations of convenience and the ends of justice both weigh in favor of dismissal. Although Plaintiffs are American entities and individuals, the dispute at issue is decidedly Swiss, and the Court is persuaded that Plaintiffs, if they so choose, would be able to adequately and more appropriately litigate this dispute in Switzerland.

B.   DISMISSAL OF CLAIMS AGAINST ALCON AND ALCON DIRECTORS

The Court also dismisses sua sponte on forum non conveniens grounds Plaintiffs' claims against Alcon and the individual Alcon officers and directors named in the Complaint.   See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991) (discussing a court's inherent authority to dismiss an action on grounds of forum non conveniens); Banco De Serguros Del Estado v. J.P. Morgan Chase & Co., 500 F. Supp. 2d 251, 254 (S.D.N.Y. 2007) (dismissing sua sponte complaint similar in all relevant aspects on the ground of forum non conveniens).   Plaintiffs' claims against Alcon and the individual Alcon directors arise out of the same underlying transaction, and are similar in all relevant respects to their claims against Novartis. As a result, for the same reasons discussed above, the Court finds that Plaintiffs' claims

-34-

against Alcon would be more appropriately litigated in Swiss court.

The Court's decision to dismiss the Complaint in its entirety also avoids the risk of inconsistent judgments. Were the Court to permit the claims against Alcon to proceed while dismissing the claims against Novartis, there is a substantial risk that inconsistent judgments regarding the same underlying transaction would be entered in United States and Swiss courts. The risk of such a result weighs strongly in favor of dismissal. See, e.g., DirecTV Latin Am., LLC v. Park 610 LLC, -- F. Supp. 2d --, No. 08 Civ. 3987, 2010 WL 305201, at *16 n.6 (S.D.N.Y. Jan. 26, 2010); Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc., 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007). Accordingly, the Court finds that dismissal of the Complaint as to all Defendants is warranted on grounds of forum non conveniens.

The dismissal, however, is subject to Defendants' expressing to the Court their consent to certain conditions: that in the event Plaintiffs commence litigation in Switzerland arising out of the circumstances and general claims asserted in this case, Defendants agree to accept service of process and to the exercise of personal jurisdiction by the relevant tribunal in Switzerland; that Defendants not assert any defenses based on statutes of

-35-

limitations that would not be available to them were this litigation prosecuted in this Court; and that Defendants would satisfy any final judgment rendered by a Swiss court in connection with such litigation. See Aguinda, 303 F.3d at 480 (affirming forum non conveniens dismissal subject to modification that the judgment be conditioned on defendant's agreement to waive statutes of limitations defenses; Blanco, 997 F.2d at 984 ("[F]orum non conveniens dismissal are often appropriately conditioned to protect the party opposing dismissal.") (collecting cases); Turedi, 460 F. Supp. 2d at 529.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 33) of defendant Novartis AG is GRANTED; and it is further

**ORDERED** that the complaint of plaintiffs Oklahoma Firefighters Pension & Retirement System, City of Monroe Employees' Retirement System, City of Westland Police & Fire Retirement System, Massachusetts Bricklayers and Masons Trust Funds, Boilermakers Lodge 154 Retirement Plan, and Erica P. John Fund, Inc. (Docket No. 5) is dismissed, provided that within seven (7) days of the date of this Order, defendants Alcon, Inc., Novartis AG, and certain Alcon officers and directors (collectively, "Defendants") submit to the Court a statement expressing their consent that in the event

-36-

plaintiffs in this action commence litigation in Switzerland
arising out of the circumstances and general claims asserted
in this case, Defendants would accept service of process and
the relevant tribunal's exercise of personal jurisdiction over
them, not assert any defenses based on statutes of limitations
that would not be available to Defendants were the litigation
of the action to proceed in this Court, and satisfy any final
judgment rendered by a Swiss court in connection with such
litigation of claims arising out of the events described in
the complaint in this action.

    The Clerk of Court is directed to terminate any pending
motions and to close this case, subject to its being reopened
in the event Defendants fail to satisfy the conditions
specified above within seven days of the date of this Order.

**SO ORDERED.**

Dated:    New York, New York
          24 May 2010

VICTOR MARRERO
U.S.D.J.

-37-