**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ALCON SHAREHOLDER LITIGATION | Consolidated Case No. 10 CV 139<br><br>ECF CASE |

**DEFENDANT NOVARTIS AG'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

*Attorneys for Defendant Novartis AG*

# Table of Contents

Page

Preliminary Statement ................................................................................................................. 1

I.      PLAINTIFFS HAVE FAILED TO MAKE THE SHOWING REQUIRED
FOR RECONSIDERATION ............................................................................................. 1

      A.     Plaintiffs have presented no "new" facts that warrant
reconsideration. .................................................................................................... 3

      B.     The Court correctly analyzed the "essential subject matter"
of the case. ............................................................................................................ 4

      C.     The Court did not err in its consideration of the location
of Alcon's shareholders. ...................................................................................... 6

      D.     The Court did not err in noting that the plaintiffs' damages
claims are not ripe. ............................................................................................... 7

      E.     There is no inconsistency between the Court's opinion and
the Bloomberg article cited by plaintiffs. ........................................................... 8

II.     THE FAILURE OF CERTAIN DEFENDANTS TO FILE CONSENTS DOES
NOT AFFECT THE AVAILABILITY OF AN ADEQUATE REMEDY, OR
OTHERWISE UNDERMINE THE COURT'S DECISION ............................................ 9

Conclusion ................................................................................................................................. 16

## Table of Authorities

Page

**Cases**

*Capitol Records, Inc.* v. *MP3Tunes, LLC*, 2009 WL 5102794 (S.D.N.Y. 2009) ........................... 3

*Commerce Funding Corp.* v. *Comprehensive Habilitation Servs.*,
   233 F.R.D. 355 (S.D.N.Y. 2005) ...................................................... 2

*In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287 (S.D.N.Y. 2009)............... 2, 6, 9 n.3

*Nakshin* v. *Holder*, 360 Fed. Appx. 192 (2d Cir. 2010) ............................................. 2, 7

*Nat'l Bank of Canada* v. *Interbank Card Ass'n*, 507 F. Supp. 1113 (S.D.N.Y. 1980)................... 4

*Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005)................................... 2

*Odyssey Re* v. *Stirling Cooke Brown Holdings*, 85 F. Supp. 2d 282 (S.D.N.Y. 2000) ............... 13

*Rmed Int'l* v. *Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292 (S.D.N.Y. 2002) ........................ 9

*Smith* v. *Masterson*, 353 Fed. Appx. 505 (2d Cir. 2009).............................................. 3

*VDP Patent, LLC* v. *Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414 (S.D.N.Y. 2008) .............. 4

**Other Authorities**

Wright & Miller, *Federal Practice and Procedure* § 2362 ............................................. 6

Defendant Novartis AG respectfully submits this memorandum in opposition to plaintiffs' motion for reconsideration.  This memorandum addresses both the specific arguments advanced by plaintiffs in their moving papers (Point I below) as well as plaintiffs' suggestion that the status of the filing of consents by defendants supports plaintiffs' position (Point II below).

## Preliminary Statement

On May 24, 2010, after full briefing, the Court granted defendant Novartis AG's motion to dismiss on the grounds of *forum non conveniens*.  In granting the motion, the Court issued a fully-reasoned 37-page Decision and Order holding that "the dispute at issue is decidedly Swiss" and finding that plaintiffs, "if they so choose, would be able to adequately and more appropriately litigate this dispute in Switzerland."  Op. at 34.  Unhappy with this result, plaintiffs filed a motion for reconsideration, taking issue with certain of the Court's factual observations, which they term "errors."  All of plaintiffs' arguments for reconsideration — in addition to being legally and factually meritless — address issues that the Court already thoroughly considered in its Decision and Order.  Accordingly, plaintiffs cannot meet the exacting standards for altering or amending a judgment under Federal Rule 59, for relief from a judgment under Federal Rule 60 or for reconsideration under Local Rule 6.3.

## I.    PLAINTIFFS HAVE FAILED TO MAKE THE SHOWING REQUIRED FOR RECONSIDERATION

Plaintiffs bring their motion for reconsideration pursuant to Federal Rules 59 and 60, as well as Local Civil Rule 6.3.  Pl. Mem. at 1.[1]  The legal standards under Rule 59 and Local Civil Rule 6.3 are the same: a motion for reconsideration "will generally be denied unless the moving

---

[1]    Plaintiffs' memorandum supporting their motion to reconsider, filed on June 2, 2010, is referred to herein as "Pl. Mem." and plaintiffs' brief in opposition to defendant Novartis AG's *forum non conveniens* motion, dated April 20, 2010, is referred to herein as "Pl. Opp. to FNC."

party can point to controlling decisions or data that the court overlooked . . . that might be expected to alter the conclusion reached by the court." *In re Gildan Activewear, Inc. Sec. Litig.*, 2009 WL 4544287 at *2 (S.D.N.Y. 2009); *see also Nakshin* v. *Holder*, 360 Fed. Appx. 192, 193 (2d Cir. 2010) ("[A] motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances."). The Rule 60 standard is similarly high, and courts will vacate or modify judgments under that rule "only in cases involving 'extraordinary circumstances, or extreme hardship,'" *In re Gildan*, 2009 WL 4544287, at *2 (citation omitted), such as "mistake, inadvertence, surprise or excusable neglect" or "newly discovered evidence," *id.* (citing Rule 60(b)).

"A motion for reconsideration is not an opportunity for the moving party to argue those issues already considered when a party does not like the way the original motion was resolved, nor is it an opportunity for the moving party to advance new facts, issues or arguments not previously presented to the Court." *In re Gildan*, 2009 WL 4544287, at *2 n.3 (citations omitted) (cited in Pl. Mem. at 5). The movant's burden is strict "in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Id.*; *see also Commerce Funding Corp.* v. *Comprehensive Habilitation Servs.*, 233 F.R.D. 355, 360 (S.D.N.Y. 2005).

Plaintiffs here do not suggest that this Court overlooked any controlling decisions; to the contrary, plaintiffs recognize that the Court was correct in applying the three-part test from *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005). Pl. Mem. at 3. Rather, plaintiffs ask the Court to "reappl[y]" the *Norex* test to consider supposedly new facts and to correct what plaintiffs characterize as "errors" in the Decision and Order. As set forth below,

none of the facts that plaintiffs identify are "new," and plaintiffs' claims of "error" do not withstand scrutiny.

       **A.    Plaintiffs have presented no "new" facts that warrant reconsideration.**

Plaintiffs' "recently discovered fact[]" — that "Novartis is utilizing one of its own U.S. subsidiaries . . . to solicit funds on the U.S. debt markets from U.S. investors with the assistance of U.S. investment banks," Pl. Mem. at 3 — is not new, but was public knowledge at the time Novartis AG moved to dismiss the Complaint on March 29.  The role of a Novartis AG U.S. subsidiary (Novartis Capital Corporation) in the financing was specifically disclosed to plaintiffs in Novartis AG's March 26 response to plaintiffs' interrogatories, *see* Savitt Decl. Ex. 12 at 13–14; indeed, plaintiffs explicitly argued this fact in their opposition to the *forum non conveniens* motion, *see* Pl. Opp. to FNC at 6 ("Novartis, through a wholly-owned subsidiary, has also sought to raise money from U.S. investors to finance its acquisition of Alcon through a three-year note offering, which Novartis is fully and unconditionally guaranteeing.").  Moreover, plaintiffs' cited support for this "recent discovery" — a March 9 Thompson Reuters report — was available at the time the parties briefed the *forum non conveniens* issue.  Pl. Mem. at 3.  This information, therefore, plainly does not provide a proper basis for reconsideration.  *See Capitol Records, Inc.* v. *MP3Tunes, LLC*, 2009 WL 5102794, at *1 (S.D.N.Y. 2009) (denying motion for reconsideration where movant merely "attempt[ed] to bolster an old argument" already made and rejected by the court); *Smith* v. *Masterson*, 353 Fed. Appx. 505, 508 (2d Cir. 2009) (evidence available "at the time defendants initially served their motion[]" cannot be considered "new" for purposes of relief under Rule 60).

**B.    The Court correctly analyzed the "essential subject matter" of the case.**

Plaintiffs contend that the Court misunderstood the nature of their case and erroneously characterized their claims as raising "corporate governance challenges," when, according to plaintiffs, all of their "remaining claims are based solely on U.S. quasi-contract and contract principles." Pl. Mem. at 7. Again, these precise arguments were made at length in plaintiffs' opposition to the *forum non conveniens* brief (at pp. 2–3, 15) and considered by the Court, *see, e.g.*, Op. at 5–6 (describing plaintiffs' breach of contract and promissory estoppel claims), and therefore cannot support a motion for reconsideration. *See, e.g.*, *VDP Patent, LLC* v. *Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 434 (S.D.N.Y. 2008) (denying motion for reconsideration where movant "simply rehashe[d] and reformulate[d] old arguments" already rejected by the court).

Moreover, as the Court found, "[t]he essential subject matter of Plaintiffs' claims is a challenge to the Public Share Acquisition on the basis of a purported breach of Alcon's Organizational Regulations." Op. at 21. Those Organizational Regulations are enacted pursuant to Alcon's articles of incorporation and Swiss corporate law, and their meaning and effect is governed by the framework of the Swiss Code of Obligations. Nobel Supp. Decl. ¶¶ 7–8.[2] There can thus be no reasonable dispute that plaintiffs' claims seeking to interpret or enforce the Organizational Regulations arise under Swiss fiduciary and corporate law. *Cf. Nat'l Bank of Canada* v. *Interbank Card Ass'n*, 507 F. Supp. 1113, 1124 (S.D.N.Y. 1980) (observing that it is "clear" that a Delaware corporation's bylaws "are to be interpreted in accordance with Delaware law").

---

[2]    The Supplemental Declaration of Professor Dr. Peter Nobel (Nobel Supp. Decl.) was submitted with Novartis AG's reply papers on the *forum non conveniens* motion on May 10, 2010.

While plaintiffs focus on the description of the Organizational Regulations in the Alcon 20-F, which description they characterize as a "promise," the Court has already found that this claim too raises Swiss law corporate governance questions:

> Since *all of Plaintiffs' claims*, at their core, challenge the actions of Alcon's board of directors on the basis of a purported breach of the Organizational Regulations, there is no ambiguity surrounding the law applicable to Plaintiffs' claims . . . .

Op. at 14 (emphasis added). In addition, as the Court recognized in its Decision and Order, the 20-Fs upon which plaintiffs rely "indicate that any provisions of the Organizational Regulations included therein are incomplete and qualified by reference to the Organizational Regulations, which were created pursuant to Swiss law." *Id.* And those 20-Fs "expressly indicate that any challenges to actions of the board of directors would be governed by Swiss law and would have to be brought in a Swiss court." *Id.* at 13.

In sum, the Court plainly found that "all" of plaintiffs' claims — including specifically their breach of contract and promissory estoppel claims — raised Swiss law corporate governance issues. Plaintiffs' argument that the Court was "confus[ed]" about the purported dismissal of their fiduciary duty claims, Pl. Mem. at 2, is therefore simply irrelevant. The Court's *forum non conveniens* analysis leads to the same conclusion — that "the dispute at issue is decidedly Swiss" — whether or not the fiduciary duty claims are considered to be part of the case.

Moreover, the Court was *not* "confused" about plaintiffs' maneuvering with respect to their fiduciary duty claims. The Court correctly understood that, as Novartis AG set forth in its Reply Memorandum (at p. 3 n.3), plaintiffs' attempted dismissal of their fiduciary duty claims — after Novartis AG had already filed its *forum non conveniens* motion — was unilateral and thus procedurally improper. *See* Op. at 2 n.3. Rule 41(a)(1) by its terms only permits a plaintiff

to dismiss the "action" — not individual claims:  "A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15."  Wright & Miller, *Federal Practice and Procedure* § 2362.  To the extent plaintiffs now suggest they should be entitled to amend their complaint (Pl. Mem. at 2), such a request is clearly too late.  *See In re Gildan*, 2009 WL 4544287, at *1, *5 (where plaintiffs chose to "fight [a] motion to dismiss and not amend the[ir] complaint," court refused to give plaintiffs "yet another bite at the apple" and thus denied motion for reconsideration in which plaintiffs sought to amend their complaint post-judgment) (cited in Pl. Mem. at 5).

      **C.**    **The Court did not err in its consideration of the location of Alcon's shareholders.**

Plaintiffs also claim that the Court's *forum non conveniens* analysis was "influenced by an incorrect assessment of Alcon's share ownership."  Pl. Mem. at 9.  According to plaintiffs, "[t]he Order describes Alcon's minority public shareholders as being 'located all over the world' and characterizes the action as 'entailing alleged losses suffered . . . predominantly in a foreign country."  *Id.*  Plaintiffs claim that both of these statements were "factually incorrect."  *Id.*

Again, there is no error and no warrant for reconsideration of the Court's Decision and Order.  *First*, plaintiffs already argued in their opposition brief that 87 percent of Alcon's minority shares are owned by U.S. residents.  *See* Pl. Opp. to FNC at 7.  The Court explicitly recognized that plaintiffs here are "American entities and individuals," but the Court squarely held that this did not change the "decidedly Swiss" nature of the dispute.  Op. at 34.  *Second*, on plaintiffs' numbers, it necessarily follows that 13 percent of Alcon's public shares are owned by non-U.S. residents; the Court's statement that the public shareholders are located "all over the world" is thus fully accurate.  In fact, the Consolidated Complaint itself recites that "it is

reasonable to assume that holders of Alcon common stock are geographically dispersed throughout the United States *and the world*." Compl. ¶ 102(a) (emphasis added).

*Finally*, plaintiffs' selective quotation from the Court's opinion is misleading. In full, the relevant sentence reads: "This litigation raises another instance of the common cases in which plaintiffs commence lawsuits in United States courts to adjudicate disputes entailing alleged losses suffered *from commercial transactions and other events that occur* predominantly in a foreign country." Op. at 7 (emphasis added). Thus, the Court did not find, as plaintiffs would have it, Pl. Mem. at 9, that the putative class's purported losses occurred predominantly in a foreign country; instead, the Court was observing (accurately) that the "commercial transactions and other events" at issue in this case occurred predominantly in a foreign country. Indeed, plaintiffs' reconsideration motion does not seriously challenge the Court's findings as to "the overwhelmingly Swiss origin and solid foundation of the business transaction at issue." Op. at 12.

> **D.    The Court did not err in noting that the plaintiffs' damages claims are not ripe.**

In a footnote, the Court "note[d]" that "to the extent Plaintiffs seek damages based on the future consummation of the Public Share Acquisition, these claims are not presently ripe for adjudication. Until the Public Share Acquisition closes, Plaintiffs' claims for damages remain speculative and premature." Op. at 11 n. 5. Plaintiffs quote this footnote as evidencing that the Decision and Order "rested in part on [the Court's] view that Plaintiffs' claims are 'not presently ripe for adjudication,'" and argue that their injunctive and declaratory relief claims *are* ripe. Pl. Mem. at 11. But plaintiffs *agree* with the Court's footnote, explicitly "conced[ing]that money damage claims" stemming from the proposed merger "are not yet ripe." *Id.* It is difficult to see how this undisputed footnote in the Decision and Order gives rise to the type of "exceptional circumstances" required on a motion of this type. *Nakshin*, 360 Fed. Appx. at 193. Moreover,

nothing in the Court's opinion suggests that its decision "rested" on the statements about the lack

of ripeness of certain claims.  The Court's conclusion — that this case is "decidedly Swiss" and

thus belongs in a Swiss court — had nothing to do with whether or not plaintiffs' claims are ripe.

> **E.    There is no inconsistency between the Court's
> opinion and the Bloomberg article cited by
> plaintiffs.**

Plaintiffs conclude their brief by attempting to create a controversy that simply does not

exist.  Plaintiffs point to the Court's description of the relevant business transactions as involving

"a long-contemplated, and laboriously planned, corporate union."  Pl. Mem. at 12 (quoting Op. at

8).  Plaintiffs then point to a December 2, 2009 Bloomberg article, which quoted a Novartis AG

spokesperson as saying that, at that time, there were "no plans regarding the minority

shareholders."  Pl. Mem. at 12.  According to plaintiffs, if this quoted statement was true, the

transaction could not have been "long-contemplated."

This is a red herring.  The Court explicitly and correctly stated that Novartis AG

announced its intent to purchase Alcon's public shares on January 4, 2010.  Op. at 4.  But as the

Court also recited, "Novartis purchased a 25 percent stake in Alcon from Nestlé on July 7, 2008,

and, as contemplated in the April 2008 Agreements, retained its option to purchase, beginning on

January 1, 2010, Nestlé's remaining 52 percent equity stake in Alcon."  *Id.*  Accordingly, when

the Court used the phrase "long-contemplated and laboriously planned" to refer to the "corporate

union" of Novartis AG and Alcon, this phrase clearly referred to the series of transactions —

beginning with the April 6, 2008 agreement with Nestlé — through which Novartis AG has

obtained its current stake in Alcon and through which, as of January 4, 2010, it has proposed to

obtain the rest of the Alcon shares it does not currently own.  Accordingly, there is no

inconsistency between the Court's Decision and Order and the December 2, 2009 Bloomberg

article that plaintiffs quote in their motion.

In any event, plaintiffs have not even attempted to explain how the supposed inconsistency would "alter the conclusion" this Court reached on the *forum non conveniens* motion. *Rmed Int'l* v. *Sloan's Supermarkets, Inc.*, 207 F. Supp. 2d 292, 295 (S.D.N.Y. 2002) (cited in Pl. Mem. at 5). Whether or not the proposed merger was "laboriously planned," it remains "decidedly Swiss." As plaintiffs themselves have stated, whether Novartis AG planned the proposed merger "in three weeks or three years before its public offer on January 4, 2010, should not be relevant on a motion to dismiss on the grounds of *forum non conveniens*." Pl. Mem. at 13.[3]

## II. THE FAILURE OF CERTAIN DEFENDANTS TO FILE CONSENTS DOES NOT AFFECT THE AVAILABILITY OF AN ADEQUATE REMEDY, OR OTHERWISE UNDERMINE THE COURT'S DECISION

At the end of its May 24 Decision and Order, the Court asked the remaining defendants to submit written consents indicating that, "in the event Plaintiffs commence litigation in Switzerland arising out of the circumstances and general claims asserted in this case," they would: (i) "accept service of process and . . . the exercise of personal jurisdiction by the relevant tribunal in Switzerland"; (ii) "not assert any defenses based on statutes of limitations that would not be available to them were this litigation prosecuted in this Court;" and (iii) "satisfy any final judgment rendered by a Swiss court in connection with such litigation." Op. at 35–36.

---

[3]    Nor does plaintiffs' "potential" intention to add a securities law claim provide a basis for reconsideration. The alleged "misstatement" plaintiffs cite antedates the filing of this action by more than a month. Novartis AG, it its March 26, 2010 verified responses to plaintiffs' interrogatories, disclosed all dates with respect to the planning of the proposed merger. If plaintiffs believed that those facts showed that an earlier statement by Novartis AG was false, they could have amended their complaint at that time. They did not, and thus should not be heard on this issue now, *after* the Court has dismissed their complaint in favor of Switzerland. Moreover, even if plaintiffs were now to bring a securities law claim based on the statement in the Bloomberg article, that would not be a basis for re-examining this Court's decision that the claims presently before it belong in Switzerland. Plaintiffs' hypothetical securities law claim does not challenge the proposed merger or any action by Alcon's directors, and would involve a different class of plaintiffs than the putative class in this suit. Perhaps for these reasons, plaintiffs only say that they will "*potentially* add a U.S. securities law claim." Pl. Mem. at 4 (emphasis added). Plaintiffs' belated and half-hearted proposal to add a meritless claim is not a basis for the Court to reconsider its *forum non conveniens* dismissal. *See In re Gildan*, 2009 WL 4544287, at *1, *5.

Defendants Novartis AG and Dr. Daniel Vasella (Novartis' AG's Chairman and former CEO) submitted their written consent on June 1, 2010.  *See* Docket Entry #46.  The other remaining defendants[4] — Alcon, Inc. ("Alcon"), Kevin Buehler (Alcon's current CEO), and Cary Rayment (Alcon's Chairman and former CEO) — submitted letters to the Court setting forth their reasons for withholding consent as to certain of the items referenced in the Court's May 24 Decision and Order.[5]  Notably, the Alcon letter concedes that Swiss courts would have jurisdiction over Alcon:  "Alcon acknowledges that, as a Swiss corporation, it is generally amenable to personal jurisdiction and service of process in Switzerland."  Exhibit A.  Alcon also agreed that "it would not raise any statute of limitation defenses in Switzerland that were not available in this action."  *Id.*  However, Alcon declined to "agree in advance that it would satisfy any hypothetical judgment" that might be entered by a Swiss Court.  *Id.*[6]

On June 2, 2010, Novartis AG filed with this Court a Supplemental Consent in which Novartis AG agreed that:

> in the event Plaintiffs in this action commence litigation in Switzerland arising out of the circumstances and general claims asserted in [this action], any final judgment rendered by a Swiss court in connection with such litigation of claims arising out of the events described in the Consolidated Complaint in this action against any of the defendants herein will be satisfied in full by Novartis AG.[7]

---

[4]     As the Court observed in its May 24 Decision and Order, defendant Nestlé S.A. was voluntarily dismissed from this action by Stipulation and Order dated May 3, 2010.  Op. at 1 n.2.  By that same Stipulation and Order, defendants Werner J. Bauer, Paul Bulcke, Francisco Castañer, James Singh, and Hermann Wirz — all Alcon directors — were also dismissed.  *See* Docket Entry #41.

[5]     The letter submitted on behalf of Alcon, dated June 1, 2010, is attached hereto as Exhibit A.  The letter submitted on behalf of Messrs. Buehler and Rayment, also dated June 1, is attached hereto as Exhibit B.

[6]     As for Messrs. Buehler and Rayment, they declined to "commit their personal assets to satisfy any judgment in an as-of-yet unfiled litigation" and to "consent to be sued personally" in Switzerland.  Exhibit B.

[7]     The Supplemental Consent filed by Novartis AG on June 2, 2010, is attached hereto as Exhibit C.

Novartis AG filed this consent so that it would be clear to plaintiffs and to the Court that the position taken by Alcon and Messrs. Buehler and Rayment does not undermine the adequacy of Swiss remedies for the injuries alleged by plaintiffs here.  Accordingly, all the prerequisites for this Court to find that a Swiss forum provides a completely adequate remedy for plaintiffs exist.[8]

Moreover, the failure of Alcon and Messrs. Buehler and Rayment to fully consent to all of the Court's conditions in no way dilutes the primary Swiss remedy for Alcon shareholders who are dissatisfied with the final merger price:  a judicial proceeding under Article 105 of the Swiss Merger Act.  As the acquiror, Novartis AG would necessarily be the *only* defendant in such a proceeding, and it alone would be responsible for making any judicially determined compensatory payment to Alcon's public shareholders.  *See* Nobel Decl. ¶¶ 59–60.[9]  As the Court observed in its May 24 Decision and Order, "[a]ll of Plaintiffs' causes of action . . . are premised on the financial injury that allegedly would result from consummation of the [proposed merger]," Op. at 17, and this is precisely the injury that could be remedied — without any involvement whatsoever on the part of the non-consenting defendants — in an Article 105 proceeding in Switzerland, *see id.* at 16.  For this reason alone, plaintiffs' motion to re-open should be denied.

In any event, plaintiffs' interests are fully protected absent full consents from Alcon, Rayment and Buehler.  Thus:

(1) <u>Jurisdiction</u>:  All of the non-consenting defendants — a Swiss corporation and two of its directors — are clearly subject to jurisdiction in Switzerland for claims based on Company Law, which the claims here indisputably are.  As the Nobel Declaration sets forth, Article 151(1)

---

[8]    Novartis AG has a market capitalization of approximately $110 billion, and its revenues over the last twelve-month period were approximately $47 billion.

of the Swiss Federal Act on International Private Law provides that "[i]n disputes based upon company law, the Swiss courts at such company's seat shall have jurisdiction over actions against the company, [and] the members or the persons," *i.e.*, directors, "whose liability is based upon company law." *See* Nobel. Decl. ex. C at *28. Here, plaintiffs' claims are clearly based on Company Law. *See* Op. at 14 ("all of Plaintiffs' claims, at their core, challenge the actions of Alcon's board of directors on the basis of a purported breach of the Organizational Regulations"). Alcon concedes jurisdiction in its June 1 letter. *See* Exhibit A at 1 ("Alcon acknowledges that, as a Swiss corporation, it is generally amenable to personal jurisdiction and service of process in Switzerland.").

As for Messrs. Buehler and Rayment, Swiss law provides that "in an action against all directors of a corporation, a forum will exist at the place of incorporation of the corporation according to article 151." Nobel Decl. ¶ 86. While the letter from counsel to Messrs. Buehler and Rayment does not acknowledge that as directors of a Swiss corporation they are subject to the jurisdiction of the Swiss courts for claims arising out of their status as directors, neither they nor plaintiffs (or plaintiffs' Swiss law expert) have said that Article 151 — which, again, establishes Swiss jurisdiction over claims asserted against "the members or the persons whose liability is based upon [Swiss] company law" — does not apply to support Swiss jurisdiction over them for the claims in this case. In fact, as the Court recognized in its May 24 Decision and Order, Alcon's Form 20-Fs specifically advised investors that "as a matter of Swiss law," claims against directors could be brought either "at the domicile of the involved director" or "at our place of incorporation in . . . Switzerland." Op. at 13–14.

---

[9]    Citations to "Nobel Decl." refer to the Declaration of Professor Dr. Peter Nobel (dated March 26, 2010), submitted with Novartis AG's initial moving papers on the *forum non conveniens* motion.

In these circumstances, where the ability of the Swiss courts to exercise jurisdiction over Messrs. Rayment and Buehler is not in doubt,[10] the mere fact that Messrs. Buehler and Rayment have declined to consent formally to such jurisdiction in advance does not call into question the availability of the Swiss forum.[11] The decision in *Odyssey Re* v. *Stirling Cooke Brown Holdings*, 85 F. Supp. 2d 282, 305–06 (S.D.N.Y. 2000), is on point. In that case, the court granted a *forum non conveniens* motion notwithstanding that certain defendants declined, during oral argument, to agree to submit to the alternative forum's jurisdiction. Their "refusal to consent to jurisdiction [was] unavailing," the *Odyssey Re* court held, because both of the non-consenting defendants were clearly subject to jurisdiction in England as a matter of British law, and therefore "their consent [was] not required in order for a British court to assert . . . jurisdiction over them." *Id.* at 305.

(2) <u>Statute of Limitations</u>: Alcon agreed in its letter not to raise any statute of limitations defenses in the Swiss forum that would not be available here. *See* Exhibit A. In any event, there would be no statute of limitations issue in the Swiss forum. At the very earliest, the limitations period on any claims plaintiffs might bring against the non-consenting defendants began to run on, January 4, 2010, the date on which the proposed merger was announced.[12] Therefore,

---

[10]    Messrs. Rayment and Buehler can, of course, be served in the United States through the Hague Convention, just as the Swiss defendants in this Court were served.

[11]    In addition, there is no basis for any argument by plaintiffs that claims against Messrs. Buehler and Rayment are essential to the relief they seek. As noted above, plaintiffs voluntarily dismissed five of the six other Alcon director defendants. And there is no allegation in the Consolidated Complaint that Mr. Buehler or Mr. Rayment played any role in the formulation of the Novartis proposal or have taken any steps to advance it. The only allegations in the Consolidated Complaint that even mention Mr. Buehler or Mr. Rayment by name are pure background. Cons. Cmplt. ¶¶ 24–25, 37, 68.

[12]    There is substantial doubt that any limitations period has begun to run at all. As the Court observed in its May 23 Decision and Order, "to the extent Plaintiffs seek damages based on the future consummation of the [proposed merger], these claims are not presently ripe for adjudication. Until the [proposed merger] closes, Plaintiffs' claims for damages remain speculative and premature." Op. at 11 n.5. The period for bringing a judicial proceeding under Article 105 of the Swiss Merger Act would not even begin to run until the proposed merger has closed: A shareholder has two months after the publication of the merger (*i.e.*, the merger effectiveness date) to bring such a claim. Nobel Decl. ¶ 62; *see also id.* ex. C at *15.

regardless of whether those claims were controlled by the Swiss limitations period for claims based on Company Law (five years from the date that the injury is discovered)[13] or contract law (generally ten years),[14] those claims clearly would remain timely.  Indeed, even a one-year statute of limitations for tort claims has not run.[15]

(3) <u>Satisfaction of Judgment</u>:  As discussed above, by its Supplemental Consent, Novartis AG has agreed that in the event plaintiffs in this action commence litigation in Switzerland arising out of the events described in the Consolidated Complaint in this action, Novartis AG (which is unquestionably a financially responsible party) will satisfy any final judgment rendered by the Swiss court in that litigation against any of the defendants herein.  Exhibit C.

But even apart from Novartis AG's undertaking, there can be no doubt that Alcon, as a Swiss corporation, would have to comply with any final judgment against it from any Swiss court having original or appellate jurisdiction.  Under Articles 2 and 16(2) of the Lugano Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, Swiss courts are competent to decide claims against Swiss domiciled companies — regardless of any consent.  *See* Exhibit G (excerpts from the Lugano Convention).  A Swiss court final judgment would clearly be enforceable against Alcon.  *See* Exhibit H (Swiss Federal Act on the Federal Supreme Court (*Bundesgesetz über das Bundesgericht*), Art. 61) (stating that judgments of the Swiss Federal Supreme Court are legally binding as of the date of issuance).  Because Swiss law is so clear — and, indeed, because it would defy common sense to suggest that a company would not be required to comply with a final judgment issued by the courts of its place

---

[13]    Swiss Code of Obligations, Art. 760 (attached hereto as Exhibit D).

[14]    Swiss Code of Obligations, Art. 127 (attached hereto as Exhibit E).

[15]    Swiss Code of Obligations, Art. 60(1) (attached hereto as Exhibit F).

of incorporation — it is conceivable that Alcon and its counsel simply misunderstood the nature of the consent that the Court requested.

Messrs. Buehler and Rayment, as directors of a Swiss corporation, would similarly be required to comply with a Swiss final judgment. As set forth in the Nobel Declaration, Article 108 of the Swiss Merger Act provides for an action against "all parties involved in the merger," Nobel Decl. ¶ 75, for damages caused by an intentional or negligent breach of duty. *Id.* ¶ 71.[16] And, as with Alcon, a Swiss court final judgment would be enforceable against Messrs. Buehler and Rayment. *See* Exhibit H. No consent would be required.

There should also be no concern that a hypothetical order from a Swiss court granting injunctive relief would be disregarded. Were such an injunction to issue, it would plainly be relevant solely as to Alcon (and Novartis AG), and there is no plausible reason to believe that Alcon — a Swiss corporation with its registered headquarters in Hünenberg, Switzerland — would or could refuse to obey a Swiss-court-ordered injunction.

In sum, in light of the legal framework in Switzerland applicable to plaintiffs' claims, Novartis AG's Supplemental Consent (Exhibit C), and the statements made in Alcon's June 1 letter (Exhibit A), plaintiffs have an adequate remedy in Switzerland without the filing of further consents by other parties.

---

[16]    Article 108(1) reads, in relevant part, as follows: "Every person who is involved in the merger, demerger, transformation or transfer of assets is liable to the corporate persons, as well as to each individual member and creditor for any damage, which is caused wilfully or through negligence, while carrying out their duties." Nobel. Decl. ex. C at *15.

**Conclusion**

For the foregoing reasons, the Court should deny plaintiffs' motion for reconsideration.


Dated:    June 14, 2010

Respectfully submitted,
WACHTELL, LIPTON, ROSEN & KATZ

/s/ Paul K. Rowe
Paul K. Rowe (PR3010)
William Savitt (WS5236)
Elaine P. Golin (EG2523)
51 West 52nd Street
New York, New York 10019
(212) 403-1000

*Attorneys for Defendant Novartis AG*